## Commonwealth v. One Ford Truck.

*Automobiles—Conditional sales—Rights of vendor in automobile seized while transporting intoxicating liquor in care of vendee or his agent—Uniform Conditional Sales Act of May 12, 1925, and the Prohibition Enforcement Act of March 27, 1923.*

1. A conditional vendor, under the Uniform Conditional Sales Act of May 12, 1925, P. L. 603, whose automobile has been seized while being used by the conditional vendee for the illegal transportation of intoxicating liquor, is protected to the extent of the unpaid instalments of the purchase price by section 11 (*B*) (iii) of the Prohibition Enforcement Act of March 27, 1923, P. L. 34, commonly known as the Snyder Act. Section 11 (*D*) (vi) can be used only where justice requires the return of the property to the conditional vendor.

2. The fact that the contract of conditional sale has not been filed within ten days, as required by the statute, does not affect the relations created between the vendor and vendee; the contract is good between the parties, and bad only with respect to purchasers and creditors, to neither of which classes does the Commonwealth belong.

Claim by a conditional vendor for the return of an automobile. Q. S. Phila. Co., Oct. Sess., 1926, No. 605, Misc. Div.

*Joseph K. Willing*, Assistant District Attorney, and *Charles E. Fox*, District Attorney, for Commonwealth.

*Louis Wagner*, for claimant.

FINLETTER, J., Jan. 17, 1927.—The automobile in question was seized while in use by one Martin for the illegal transportation of intoxicants. Proceedings for its condemnation are in progress, but have not reached the point of sale.

It appears that John J. Daly and Henry J. Smith entered into a contract, with respect to this car, which was drawn in accordance with the Uniform Conditional Sales Act of May 12, 1925, P. L. 603. Daly was the conditional vendor and Smith the conditional vendee. Daly subsequently assigned his rights under the contract to Edson & Company. The total price to be paid for the car was $665.86. Smith had paid on account $222. Edson & Company now demand the return of the car.

The contract between Daly and Smith provides that "title to the car shall remain in the seller until all amounts due are fully paid in cash, and when paid, and all other obligations are discharged by the purchaser, the seller shall give the purchaser an absolute bill of sale or other evidence of satisfaction of this contract. . . . Purchaser shall not use or permit said vehicle to be used for transporting or holding intoxicating liquor contrary to law. . . . If purchaser shall fail to pay . . . or breach this contract, . . . seller may take possession of said vehicle."

The contract is strictly in accordance with the provisions of the Uniform Conditional Sales Act (*supra*), among them section 4, which provides that "Every provision in a conditional sale *reserving property in the seller*, after possession of the goods is delivered to the buyer, shall be valid as to all persons."

The effect of the contract is that possession only of the vehicle passed to Smith, and the right of property remained in Daly and his assignee, subject to Smith's right of possession so long as he kept the contract.

It is conceded that the claimant had no knowledge of, or connection with, the illegal use of the vehicle. And, as was said in Com. *v.* One Ford Truck, 85 Pa. Superior Ct. 188, "The purpose of the legislature was to protect the rights of innocent persons who have relation to vehicles used for unlawful

purposes." This being so, the only question is whether or not the legislative protection is broad enough to cover the relations created by this particular contract. Unless it is found in the statute we cannot grant it, for to do so would be to legislate judicially.

In Com. v. One Studebaker Light Six Coupé, 86 Pa. Superior Ct. 532, and Com. v. One Buick Roadster, 88 Pa. Superior Ct. 24, the Superior Court found itself unable to give relief to an innocent mortgagee of a vehicle 'which had been illegally used by its owner. This particular situation was held by the court to be untouched by the act.

Is, then, the interest—whatever it is—of a conditional vendor under the Uniform Conditional Sales Act protected by the Snyder Act? Those parts of that statute that are pertinent are paragraphs *(B)* (III) and *(D)* (VI) of section 11 (P. L. 1923, page 34). The former deals with bailments and gives the innocent bailor a claim upon the proceeds of the sale of the forfeited property. The latter protects the rights of an owner and, as interpreted by the Superior Court, a bailor as well: Com. v. One Ford Truck, 85 Pa. Superior Ct. 188. Paragraph *(D)* (VI) provides that the court *may* return the car to such an owner, but no provision is made for a lien upon the proceeds of the sale of the forfeited property.

The evident purpose of the legislature, in the two paragraphs, was to bring about the forfeiture to the State of all rights and property in the vehicle of its guilty possessor, and at the same time protect the innocent person who may have either complete or partial interest in it. In the case of a bailment under the usual form of instalment lease, the innocent bailor is interested only in the deferred payments. These he may have out of the proceeds of the sale, the guilty bailor forfeiting his interest represented by the excess of the proceeds over the deferred payments. Where, however, the vehicle is owned absolutely by an innocent person, there is no property or interest of a guilty possessor that should be forfeited. In this situation, section *(D)* (VI) gives the court the power to return the property to the owner. Paragraph *(D)* (VI) is not mandatory, because, no doubt, applying, as it does, to bailors as well as absolute owners, the return of the property might in some cases give the claimant more than was due him. Such a situation arises most frequently in connection with automobiles that are the subject of instalment leases. The same situation arises in connection with contracts drawn under the Uniform Conditional Sales Act, where a large part of the price has been paid by the conditional vendee. The return of the car in such a case could not properly be made. And since there is no provision in the Snyder Act giving an owner a lien upon the proceeds of the sale of a condemned car, the situation is difficult to handle under paragraph *(D)* (VI). Can it be dealt with under *(B)* (III)?

The Uniform Conditional Sales Act of 1925 was not in existence when the Snyder Act of 1923 was passed. If the interest of the conditional vendor is to be protected by the act, which of the two methods of protection apply, that provided in paragraph *(B)* (III) or that of paragraph *(D)* (VI)?

It is sometimes assumed that *(B)* (III) was drawn to meet the very usual transaction of the instalment lease. But the language of the act is more general. It applies to any bailment: Com. v. Studebaker Coupé, 86 Pa. Superior Ct. 532, 536.

Does it apply to the conditional sales described by the Uniform Act? The scheme of the statutory conditional sale is very like that of the instalment lease. The "seller-bailor" delivers possession of the property to the "buyer-bailee," and the latter promises to pay a "price-rent" in instalments, with

provision for ultimate full ownership by the "buyer-bailee" upon final payment. In legal effect the transactions differ only in the names by which the contract and the parties to it are described. But the facts and the relations of the parties are not changed by merely calling them by certain names. The law looks to the substance. Calling a document a "lease" and a payment a "rental" will not change a sale into a bailment: Kelly Springfield Road Roller Co. v. Spyker, 215 Pa. 332.

The effects of the two contracts are identical; the right of property remains in the "vendor" and in the "lessor." The right of possession passes to the "lessee" as well as to the "vendee." In both cases it remains absolute in the vendor and bailor until the happening of a condition, subsequent to the making of the "contract" or "lease," but precedent to any change of status, vests absolute property in the "vendee" or "lessee" or restores the right of possession to the "vendor" or "lessor," depending upon whether final payment has been made or a default has occurred. It must be remembered that the statutory conditional sale is not a conditional sale in which property vests in the vendee subject to divesting upon the happening of a condition subsequent. In the statutory conditional sale, property never passes until it passes finally and irrevocably.

On analysis of the transaction described in the Uniform Act, it is really an executory contract to make a sale upon the happening of a series of conditions, to which is added a bailment until the happening of a certain event.

Since the purpose of the act is to "protect innocent owners," we think we should give such interpretation to it as will further that purpose, so far as we may do so without judicial legislation, and so far as the situation will permit.

Paragraph (D) (VI), while it deals with both bailor and owner, can be used only where justice permits the return of the property. There is no provision for a sale and a lien on the proceeds. It would be improper to return a car to a bailor or conditional owner whose interest, while existing, was slight; say, for example, one to whom three-quarters of the payments provided for had been made. If we were permitted to attach a condition to the return of the property, paragraph (D) would be available. But the act says nothing about conditions, and, however just and practical it might be, no such practice exists. The relief of the "conditional vendor" whose interest in the property is less than its full value must come, if at all, from paragraph (B) (III); and we are of opinion that it does.

It has been suggested that the only remedy that the claimant has is, as owner, under paragraph (D) (VI), because the contract was broken by the illegal use of the vehicle. The bailment, it is said, being thus terminated, the conditional vendor become once more the absolute owner and must claim as such. That, however, is not the provision of the contract, which gives to the vendor, upon breach, only the right to "take possession of the vehicle." Besides, the illegal use by a third party would not be a breach by a vendee who had no knowledge of it or part in it.

It seems that the contract between Smith and Daly was not recorded. The statute provides that a conditional sale reserving property in the seller shall be void as to purchasers and creditors without notice of it, unless the contract has been filed within ten days of its making. We do not think this affects the question or gives the Commonwealth any additional rights of forfeiture.

The contract is good between the parties, and bad only with respect to purchasers and creditors, to neither of which classes the Commonwealth belongs. The purpose of the exception was to protect persons who may have

parted with value relying upon the appearance of ownership resulting from possession: Martin v. Mathiot, 14 S. & R. 214. The State is within neither the spirit nor the letter of the exception: United States v. Torres, 291 Fed. Repr. 138.

As the proofs now stand, the interest of the vendor amounts to less than the whole value of the car. He has been paid $222 on account of the price, $666. It would not be proper for us to return the car to him. If it should appear that the car is now worth less than the vendor's claim, we could award the car to him. Otherwise, he may pursue his claim as bailor to a lien upon the proceeds of the sale. We will hear further proof upon the present value of the car if it is desired to present it. If none is offered, we will dismiss the petition for the return of the car, with leave to the claimant to pursue his lien upon the proceeds of its sale.